UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANITA H., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security Administration, <br><br> Defendant. | Case No. CV 18-2078-SP <br><br> MEMORANDUM OPINION AND ORDER |

**I.**

**<u>INTRODUCTION</u>**

On March 13, 2018, plaintiff Anita H. filed a complaint against defendant, Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Both parties have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two main issues for decision: (1) whether the

1

Administrative Law Judge's ("ALJ") residual functional capacity ("RFC") assessment was supported by substantial evidence; and (2) whether the ALJ properly evaluated plaintiff's subjective complaints. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 5-11; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 3-9.

Having carefully studied the parties' written submissions, the decision of the ALJ, and the Administrative Record ("AR"), the court concludes that, as detailed herein, the ALJ's RFC finding was not supported by substantial evidence, and the ALJ failed to properly evaluate plaintiff's subjective complaints. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions set forth in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 55 years old on her alleged disability onset date, completed ninth grade. AR at 51, 66. She has past relevant work as a home health attendant or caregiver and as a companion. *Id.* at 61.

On June 26, 2014, plaintiff filed an application for disability insurance benefits. *Id.* at 66. In the application, plaintiff alleges she has been disabled since March 1, 2010 due to high blood pressure, diabetes, low back pain, left leg problems, knee pain, osteoporosis arthritis on knees, and insomnia. *Id.* at 66-67. The Commissioner denied plaintiff's application, after which plaintiff filed a request for reconsideration, which was denied. *Id.* at 90-96. Plaintiff then filed a request for a hearing. *Id.* at 97.

On December 16, 2015, plaintiff, represented by counsel, appeared at a hearing before the ALJ. *Id.* at 32-37. At the hearing, the parties determined plaintiff's SSI application was not before the ALJ. *Id.* at 32. As such, the ALJ continued the hearing until the application could be located. *Id.* at 35-36. On

October 13, 2016, plaintiff, represented by counsel, again appeared and testified at a hearing before the ALJ. *Id.* at 41-64. The ALJ now had plaintiff's SSI and DIB applications, and the hearing proceeded. The ALJ also heard testimony from Susan L. Allison, a vocational expert ("VE"). *Id.* at 60-64. On January 30, 2017, the ALJ denied plaintiff's claim for benefits. *Id.* at 17-26.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since March 1, 2010, the alleged onset date. *Id.* at 22.

At step two, the ALJ found plaintiff suffered from the following severe impairments: osteoarthritis, degenerative disc disease, arthritis of knees, diabetes mellitus, neuropathy, and obesity. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal the severity of one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 23.

The ALJ then assessed plaintiff's RFC,[1] and determined plaintiff had the RFC to perform less than the full range of light work, specifically, plaintiff could: lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk six hours in an eight-hour workday; sit six hours in an eight-hour workday, with the ability to stand and stretch one to two minutes per hour; climb stairs; occasionally climb ladders, ropes, and scaffolds; and frequently stoop, kneel, crouch, and crawl. *Id.*

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

1 The ALJ found, at step four, that plaintiff was capable of performing past relevant work as a home health attendant and companion. *Id.* at 26. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.*

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## <u>STANDARD OF REVIEW</u>

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Commissioner must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## **DISCUSSION**

As an initial matter, plaintiff argues the ALJ erred in her step four determination. P. Mem. at 5. The ALJ stated plaintiff could still perform past relevant work as a home attendant, which is performed at a medium exertion level, even though the ALJ found plaintiff only retained the RFC for less than the full range of light work. *See* AR at 23, 26. Indeed, in the ALJ's opinion, she first stated plaintiff was "capable of performing past relevant work as a home attendant and companion." *Id.* at 26. But in the same section, the ALJ recounted the VE's testimony that home health attendant work was performed at a medium level, whereas companion work was performed at a light level. *Id.* The ALJ stated she relied on the VE's testimony and found plaintiff is "capable of performing her past relevant work as a companion as the position is actually and generally performed in the national economy." *Id.*

Because the ALJ's statements are directly contradictory, it appears the ALJ's initial statement that plaintiff could perform home health attendant work was made in error. Defendant does not dispute this, but correctly points out that this was a harmless error, assuming the ALJ's finding that plaintiff could perform her past work as a companion is supported by the record. *See* D. Mem. at 3-4. The court therefore turns to plaintiff's main arguments, starting with the ALJ's RFC determination.

5

A. **The ALJ's RFC Determination Is Not Supported by Substantial Evidence**

Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence. P. Mem. at 5-8. First, plaintiff argues the ALJ improperly rejected the only medical opinions of record, and thus the ALJ's RFC assessment functions as an impermissible lay medical opinion. P. Mem. at 6; Reply at 3-4. Second, she argues her impairments are exacerbated by her obesity, and the ALJ failed to properly consider her obesity in the RFC assessment. P. Mem. at 6-7.

RFC is what one can "still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1)-(2). The ALJ reaches an RFC determination by reviewing and considering all of the relevant evidence, including non-severe impairments. *Id.* When the record is ambiguous, the Commissioner has a duty to develop the record. *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); *see also Mayes*, 276 F.3d at 459-60 (ALJ has a duty to develop the record further only "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence"); *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) ("If the ALJ thought he needed to know the basis of [a doctor's] opinion[ ] in order to evaluate [it], he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physician[ ] or submitting further questions to [him or her]."). This may include retaining a medical expert or ordering a consultative examination. 20 C.F.R. § 404.1519a(a). The Commissioner may order a consultative examination when trying to resolve an inconsistency in the evidence or when the evidence is insufficient to make a determination. 20 C.F.R. § 404.1519a(b).

The medical evidence here is comprised of consultation and treatment notes starting from November 25, 2013, when plaintiff was diagnosed with hyperosmolar nonketoacidosis with severe, uncontrolled diabetes mellitus type 2. AR at 286.

On December 11 and 26, 2013, and January 15, May 16, and June 17, 2014, treatment notes indicated plaintiff had low back pain and knee pain, but a nurse practitioner noted the pain was controlled by Norco medication. *Id.* at 241, 242, 243, 244, 245. On August 19, 2014, notes indicated plaintiff had chronic back pain but oral pain medication provided relief. *Id.* at 240. Treatment notes indicate plaintiff was referred to an orthopedic doctor, but the record does not reflect plaintiff ever saw one. *Id.* at 240, 241.

X-rays taken on May 21, 2014 showed plaintiff had moderate facet joint degenerative change in the lower lumbar spine with related grade 1 anterior spondylolisthesis of L4 on L5 and 5 mm calcification in the left perispinal indeterminate etiology. *Id.* at 246.

Treatment notes from October 16, 2014 indicate plaintiff still had lower back pain and severe osteoarthritis in her knee, and plaintiff was again referred to an orthopedic doctor. *Id.* at 329. On October 4, 2016, an examination of plaintiff's knees revealed mild subchondral sclerosis, medial compartment joint space narrowing, greater on the left, mild degenerative lateral subluxation of the tibia bilaterally, more prominent on the left, and calcifications seen posterior to the left and right fibular heads, and osteoarthritis. *Id.* at 377.

Two state agency physicians, Dr. L.C. Chiang and Dr. K. Beig, after reviewing the evidence in plaintiff's file, concluded there was insufficient evidence to make a disability determination and the evidence needed could not be obtained, but nonetheless concluded plaintiff's condition was not disabling on any date through December 31, 2013, the date last insured. *Id.* at 71, 78.

Based on the record, the ALJ determined plaintiff had the RFC to perform less than the full range of light work. *Id.* at 23. Specifically, the ALJ found plaintiff could: lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk six hours in an eight-hour workday; sit six hours in an eight-hour

workday with the ability to stand and stretch estimated to take one to two minutes per hour; climb stairs; occasionally climb ladders, ropes, and scaffolds; and frequently stoop, kneel, crouch, and crawl. *Id.* In reaching her RFC determination, the ALJ gave no weight to the opinions of the state agency physicians and further reduced plaintiff's RFC for light work. *Id.* at 25.

With respect to plaintiff's obesity, the ALJ found the treatment notes supported the finding that plaintiff is "somewhat obese," but there was no evidence her obesity caused any significant damage to her vital organs or musculoskeletal system. *Id.* Nonetheless, the ALJ stated she factored plaintiff's obesity into the RFC limitations. *Id.*

The crux of the matter in plaintiff's first argument here lies in whether the ALJ could solely rely on her own interpretation of the medical records in order to make an RFC determination or had a duty to develop the record. Having rejected the state agency physicians' opinions, and lacking any other medical opinions, the ALJ's RFC determination was solely based on her own interpretation of the treatment notes. But an ALJ may not act as her own medical expert because an ALJ is "simply not qualified to interpret raw medical data in functional terms." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *see Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (ALJ should not make his "own exploration and assessment" as to a claimant's impairments); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); *Miller v. Astrue*, 695 F. Supp. 2d 1042, 1048 (C.D. Cal. 2010) (it is improper for the ALJ to act as the medical expert); *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (ALJ is not qualified to extrapolate functional limitations from raw medical data); *Afanador v. Barnhart*, 2002 WL 31497570, at *4 (N.D. Cal. Nov. 6, 2002) (ALJ failed to develop the record when she did not obtain a medical opinion concerning

claimant's specific diagnosis). Instead, the ALJ should have retained an examining physician or medical expert to properly evaluate the evidence.

The absence of a medical opinion is not necessarily fatal, but the RFC determination still must be supported by substantial evidence. *See Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (ALJ must provide evidentiary support for his interpretation of medical evidence). Here, the treatment records did not provide sufficient indications of plaintiff's functional limitations. The treatment records only indicate plaintiff had back and knee pain but do not indicate the functional limitations caused by such pain. X-rays of her lumbar spine and knees yielded results such as moderate facet joint degenerative change in the lower lumbar spine to moderate to severe osteoarthrosis (*see* AR at 246, 247, 377), but again, it is not clear what functional limitations would result. As such, the ALJ's RFC determination was not supported by substantial evidence. The ALJ was not qualified to translate the data into functional limitations.

Turning to the issue of whether the ALJ properly considered plaintiff's obesity, although obesity is not a listed impairment, the ALJ must consider the effect of obesity on a claimant's other impairments, ability to work, and general health even when a claimant does not raise the issue. *See Revised Medical Criteria for Determination of a Disability, Endocrine System and Related Criteria,* 64 F.R. 46122 (effective October 25, 1999) (delisting 9.09, "Obesity," from the Listings); *Celaya v. Halter*, 332 F.3d 1177, 1181-82 (9th Cir. 2003); *see also* Social Security Ruling ("SSR") 02-1p (requiring an ALJ to consider the effects of obesity at several points in the five-step sequential evaluation). An ALJ must "evaluate each case based on the information in the case record" because obesity may or may not increase the severity of the impairments. SSR 02-1p. When the record does not indicate that obesity exacerbated other impairments, the claimant is represented by counsel, and the claimant produces no evidence to establish equivalence to a listed

impairment, then it is not reversible error for the ALJ to not analyze obesity at each step. *Burch v. Barnhart*, 400 F.3d 676, 682-84 (9th Cir. 2005) (finding no reversible error in ALJ's RFC determination because there was no evidence in claimant's records of functional limitations due to obesity).

Here, the record does not indicate plaintiff's obesity exacerbated other impairments; it only sparingly mentions obesity. On November 25, 2013, Dr. Raptis at the Pomona Valley Hospital noted plaintiff had morbid obesity and counseled her on weight loss and exercise. AR at 288. On December 11, 2013, treatment notes from the Pomona Community Health Center indicated a nurse practitioner discussed plaintiff's obesity with her, as well as diet and exercise. *Id.* at 245. On May 6, 2014, treatment notes from the Pomona Community Health Center indicated plaintiff had lost twelve pounds and was encouraged to continue the weight loss. *Id.* at 242. On October 16, 2014, plaintiff had lost more than ten pounds. *Id.* at 329. Other progress notes only note plaintiff's obesity but do not elaborate on it. *Id.* at 349, 351. During the hearing, plaintiff testified she was overweight, and her doctors were encouraging her to lose weight and change her diet. *Id.* at 59.

The ALJ stated she considered plaintiff's obesity in her RFC finding; however, the decision sheds little light as to how it was considered. Although it is true there is no evidence pertaining to if or how plaintiff's obesity exacerbates her impairments, this dearth largely stems from the lack of evidence on plaintiff's functional limitations as a whole. Therefore, this court cannot say at this juncture whether the ALJ erred in failing to properly consider plaintiff's obesity. As discussed above, on remand, the ALJ should retain a medical expert to properly analyze the evidence in the record, and in doing so should consider the effects of plaintiff's obesity on her impairments.

B. **The ALJ Did Not Properly Consider Plaintiff's Testimony**

Plaintiff also argues the ALJ failed to properly evaluate her subjective complaints. P. Mem. at 8. Specifically, plaintiff argues the ALJ failed to articulate clear and convincing reasons for discounting these complaints. *Id.*

An ALJ must make specific credibility findings, supported by the record. SSR 96-7p. To determine whether testimony concerning symptoms is credible, an ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, an ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281 (citation omitted); *accord Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

The ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47. To permit a meaningful review of the ALJ's credibility determination, the ALJ must "specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Id.*

At the first step, the ALJ here found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 24. At the second step, because the ALJ did not find any evidence of malingering, she was required to provide clear and convincing reasons for discounting plaintiff's credibility. The ALJ seemed to give three reasons for discounting plaintiff's credibility: (1) plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record; (2) plaintiff made inconsistent statements about her activities; and (3) plaintiff received conservative treatment. *Id.* at 24-25.

The first reason cited by the ALJ for discounting plaintiff's credibility – plaintiff's statements were not consistent with the medical evidence – is neither clear nor convincing. The ALJ detailed plaintiff's treatment notes and various medical findings, and concluded the clinical findings were inconsistent with the severity of plaintiff's subjective complaints. *See* AR at 24-25. In other words, the ALJ did nothing more than recite medical findings, and failed to specify which parts of plaintiff's testimony she found inconsistent with the medical evidence. Therefore, this was not a clear and convincing reason to discount plaintiff's credibility. *See Brown-Hunter*, 806 F.3d at 489; *see also Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").

The second reason the ALJ provided for finding plaintiff less credible was that plaintiff made inconsistent statements about her activities. The ALJ noted plaintiff reported she was not able to function and did not clean or drive, but then testified at the hearing she could vacuum, do the dishes, and clean. AR at 25.

In an Exertion Questionnaire, plaintiff indicated she could not function, she was sleepy all the time, and had blurry vision. *Id.* at 212. She stated she could

wash dishes but could not stand for a long period, and could not pick up her clothes and put them in the washer. *Id.* Plaintiff also stated she could walk from one corner to the next before she felt pain. *Id.* Plaintiff indicated she did not clean her home. *Id.* at 213.

At the hearing, plaintiff also testified she could only walk comfortably for one block. *Id.* at 51. She also testified she could vacuum one room at a time before needing to sit down. *Id.* at 54. Plaintiff also testified she could wash dishes but needed periodic breaks. *Id.* at 55. She also testified she cleaned early in the morning, read the Bible and magazines, and watched television. *Id.* at 56.

Defendant acknowledges the difference between plaintiff's testimony and her Exertion Questionnaire, that is, she first stated she could not clean but then testified she did vacuum and would do some cleaning in the morning, is not a marked one. D. Mem. at 8. Indeed, this difference is minimal and does not detract from plaintiff's credibility. Her statements are otherwise not inconsistent. Her statement in the questionnaire that she "could not function" was clearly not meant to be taken literally; in the same questionnaire, plaintiff also wrote she could wash dishes and could walk short distances. This was consistent with the specific activities she testified about at the hearing. As such, this reason for rejecting plaintiff's credibility was not clear or convincing, or supported by substantial evidence.

The last reason the ALJ provided for rejecting plaintiff's credibility was that plaintiff received conservative treatment despite her complaints of pain. *Id.* at 25. Specifically, the ALJ noted that despite plaintiff's allegations of limiting pain, plaintiff testified she stopped taking Norco and Soma medications because she did not want to be addicted to pills, refused knee injections despite complaints of knee pain, and refused surgery despite testifying she required surgeries in both knees because she was concerned she would not have aftercare. *Id.* The ALJ found

13

plaintiff's treatment was routine and conservative, and plaintiff had not generally received the type of medical treatment one would expect for a totally disabled individual. *Id.*

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *see also Tommasetti*, 533 F.3d at 1039-40 (conservative treatment may be a clear and convincing reason for discounting a claimant's credibility). Treatment with pain medication has been viewed as conservative. *See, e.g., Huizar v. Comm'r*, 428 Fed. Appx. 678, 680 (9th Cir. 2011) (finding that plaintiff responded favorably to conservative treatment, which included "the use of narcotic/opiate pain medications"). Furthermore, an ALJ "may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" in assessing a claimant's testimony. *Molina v. Astrue*, 674 F.3d 1104, 1113 (internal citation and quotation marks omitted).

At the hearing, plaintiff testified she had been taking Norco and Soma but did not take the medications every time she had pain because she did not want to become addicted to them, although she indicated she still sometimes took Soma. AR at 54. Furthermore, on December 26, 2013, June 17, 2014, and October 16, 2014, plaintiff declined knee injections for her knee pain. *Id.* at 241, 244, 329. Plaintiff also testified at the hearing that a doctor had told her she required surgery on both knees. *Id.* at 53. She testified she did not want to have surgery because she did not know who could take care of her after the surgery. *Id.* The record does not show surgery was needed on plaintiff's knees; rather, progress notes reflect the recommended treatment method for plaintiff's knee pain was knee injections.

Plaintiff's choice to limit certain narcotic medications because she was afraid of becoming addicted to them was reasonable. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (stating that the failure to seek treatment may be a basis

for an adverse credibility finding unless there was a good reason for not doing so); *but see McCoy v. Colvin*, 2014 WL 6679664, at *12 (N.D. Cal. Nov. 24, 2014) (plaintiff's refusal to take pain medication because she did not want to become addicted and did not like the way she felt after taking it was an inadequate explanation for failure to seek treatment) (citations omitted). Plaintiff was taking Gabapentin for her neuropathy. *See* AR at 53-54. Nonetheless, the use of prescribed narcotic medication, by itself, may be considered conservative treatment. *See Huizar*, 428 Fed. Appx. at 680; *Higinio v. Colvin*, 2014 WL 47935, at *5 (C.D. Cal. Jan. 7, 2014) (holding that, despite the fact that plaintiff had been prescribed narcotic medication at various times, plaintiff's treatment as a whole was conservative).

When narcotic pain medication is combined with other treatments, it is no longer considered conservative. *See, e.g.*, *Lapierre-Gutt v. Astrue*, 382 Fed. Appx. 662, 664 (9th Cir. 2010) (treatment consisting of "copious" amounts of narcotic pain medication, occipital nerve blocks, and trigger point injections was not conservative); *Christie v. Astrue*, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 18, 2015) (treatment with narcotics, steroid injections, trigger point injections, epidural injections, and cervical traction was not conservative). Here, plaintiff was prescribed but at times declined knee injections, and thus only received pain medication. There is no reason in the record as to why plaintiff declined knee injections. As to plaintiff's claim she required surgery on her knees, as the ALJ noted, this is not corroborated by the record. Thus, with her treatment limited to medication, the ALJ reasonably characterized plaintiff's treatment as conservative.

Plaintiff's conservative treatment was a legitimate reason to discount her subjective complaints. But the other reasons the ALJ gave – plaintiff's purportedly inconsistent statements with the medical evidence and about her daily activities – were not. Although in some cases a single reason may be sufficiently clear and

convincing to discount a claimant's testimony, here, where the ALJ gave so many other reasons that were not supported by the record or were insufficiently supported, the ALJ failed to provide sufficient clear and convincing reasons to discount plaintiff's subjective complaints.

## V.
## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required to fully develop the record. On remand, the ALJ shall retain a consultative examiner or medical expert, and either credit his or her

16

opinion or provide specific and legitimate reasons supported by substantial evidence for rejecting it.  The ALJ shall also reconsider plaintiff's credibility and either accept her testimony or provide clear and convincing reasons for rejecting it. The ALJ shall then proceed through steps two, three, four, and, if necessary, five to determine what work, if any, plaintiff was capable of performing.

## VI.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED:  September 24, 2019

SHERI PYM
United States Magistrate Judge